# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **In the Matter of TODD A. LaMONT and CHRISTINA A. LaMONT,** | **Case No. 12 C 2481** |
| **Co-Debtors-Appellees,** | **Appeal from Unite4 States Bankruptcy Court Northern District of Illinois USBC No. 08 B 32995** |
| **LYUBOMIR ALEXANDROV,** | **Hon. Harry D. Leinenweber** |
| **Movant-Appellant.** | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Appellant Lyubomir Alexandrov's appeal from the Bankruptcy Court's denial of his Motion to Modify the Automatic Stay in the case of *In re LaMont*, Case Number 08-BK-32995. For the reasons stated herein, the judgment of the Bankruptcy Court is affirmed and modification of the stay is denied.

### I. BACKGROUND

First, the Court notes that Appellees Todd and Christina LaMont (the "Appellees") did not file a brief in response to Appellant's brief. The response brief was initially due on June 15, 2012. On July 19, 2012, because they had still not filed a brief, the Court gave them seven additional days to do so. Those seven days passed without a response from Appellees. The only

facts the Court has available to it, therefore, are from Appellant's brief and the bankruptcy record on appeal.

Appellant Lyubomir Alexandrov (hereinafter, the "Appellant" or "Tax Purchaser" or "Purchaser") seeks a lifting of the stay so that he can seek issuance of the deed to debtors' property.

On November 14, 2008, Appellant purchased the delinquent real estate taxes on the subject property at 800 Grant Drive in Minooka, Illinois, (located in Grundy County) which was owned by Appellees. When he made the purchase, Appellant received a Certificate of Purchase from the County Collector of Grundy County, the effect of which will be discussed in greater detail below. Appellees had until November 14, 2011 to redeem the delinquent taxes and retain their property.

On December 3, 2008, Appellees filed a voluntary Chapter 13 Petition and a proposed Chapter 13 Plan ("the Plan"). The proposed Plan was modified and then confirmed on February 12, 2009. The confirmed Plan did not provide for any payments to be made to Appellant. It did, however, list Grundy County as a secured creditor and provided for the repayment of delinquent taxes to Grundy County over the life of the Plan.

Appellant alleges that at the time of the Plan's confirmation, he had still not received notice of Appellees' bankruptcy proceeding. It is unclear when exactly he received notice, but on January 26, 2012, Appellant filed a Motion in Bankruptcy Court to

modify the automatic stay entered pursuant to 11 U.S.C. § 362. Appellees responded to this Motion on February 10, 2012. Appellant was not given an opportunity to reply and on February 17, 2012, the Bankruptcy Court orally denied Appellant's motion. After the court denied his motion for relief from that judgment, Appellant filed this appeal.

## II. **LEGAL STANDARD**

This Court has jurisdiction over this appeal pursuant 28 U.S.C. § 158. Under Bankruptcy Court Rule 8013, the Court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. There are no such factual issues relevant to the determination in this case. The Court reviews the bankruptcy court's conclusions of law under a *de novo* standard. *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003).

## III. **ANALYSIS**

The issue presented by this appeal is one on which bankruptcy and district courts in Illinois are split. The split stems from the different approaches taken when characterizing the rights held by a purchaser at an Illinois Tax Sale; the rights held by the tax-delinquent landowner and bankruptcy debtor; and the treatment of these rights within the context of a Chapter 13 bankruptcy proceeding. Though this split has yielded different results in similar cases for some years, the Seventh Circuit has not yet taken the opportunity to endorse one of these approaches over the other.

For the reasons explained below, this Court adopts the view that modification of the automatic stay is inappropriate in this situation. In an effort to address these issues fully, the Court will discuss the competing approaches and reasoning regarding the treatment of a tax sale in bankruptcy. It is important first, however, to explain the Illinois Tax Sale process.

### A. Illinois Tax Sale Process

The Illinois Tax Code states that on January 1 of each year, a lien attaches to all non-exempt real property securing the payment of the taxes levied on that property in that year. 35 Ill. Comp. Stat. 200/21-75. This lien has priority over all other liens on the property, even those prior in time. *Id.* If the taxes are not paid, the county may bring an action to foreclose the lien and seek a judgment and order of sale in the Illinois Circuit Court. *Id.;* 35 Ill. Comp. Stat. 200/21-150 through 21-185. The landowner/tax debtor then has the opportunity to pay the delinquent taxes and interest up to and including one business day before the sale. 35 Ill. Comp. Stat. 200/21-165.

If the taxes are not paid, the collector may proceed with the tax sale. 35 Ill. Comp. Stat. 200/21-205. Potential tax purchasers (or bidders) compete or "reverse bid" for the right to buy the taxes. Each bidder agrees to pay the taxes and any interest and fees due to the county. In addition, tax purchasers can make a return on their investment by charging the landowner a "penalty" or

premium interest rate on top of that sum. 35 ILL. COMP. STAT. 200/21-215.

The penalty is where the "reverse" bidding occurs. The maximum penalty a bidder may charge a landowner is 18 percent. *Id*. The potential purchasers engage in reverse bidding, offering successively lower penalties. The winner is the bidder offering the lowest penalty rate.

That winning tax purchaser pays to the county all taxes, interest and fees due and owing. In return, once the tax sale is approved by a judge, the purchaser receives a "certificate of purchase" and the tax lien is extinguished. 35 ILL. COMP. STAT. 200/21-240, 200/21-75. The landowner/tax debtor, however, remains personally liable to the county for the taxes even after the lien is extinguished. 35 ILL. COMP. STAT. 200/21-440.

For a prescribed period after the tax sale (during the redemption period), the landowner may still redeem his property by depositing the full amount of delinquent taxes, plus interest and the appropriate penalty, with the county clerk. 35 ILL. COMP. STAT. 200/21-355. The county then passes this along to the tax purchaser.

If the landowner does not redeem the property within the redemption period, the certificate of purchase gives the tax purchaser the right to petition the circuit court for a tax deed at any time within six (6) months of the expiration of the applicable

redemption period.  35 Ill. Comp. Stat. 200/21-260(f), 200/21-350. The purchaser cannot receive the deed, however, until after expiration of the redemption period.  After the redemption period, the circuit court may order the county collector to issue the purchaser a tax deed and place the purchaser in possession of the property.  35 Ill. Comp. Stat. 200/22-40.

Before the redemption period expires and such a tax deed is issued and recorded, however, the mere issuance of the certificate of purchase does not affect the legal or equitable title of the property, which remain with the landowner through the applicable redemption period.  *See Matter of Application of Cook Cnty. Treasurer*, 542 N.E.2d 15, 16 (Ill. App. Ct. 1989).  Before expiration of the redemption period, the purchaser holds only "an interest in obtaining a tax deed – an interest that Illinois law characterizes as a lien in his favor." *Ballinger v. Geithner*, 437 Fed.Appx. 480, 482 (7th Cir. 2011) (citing *In re Application of Rosewell*, 537 N.E.2d 762, 765 (Ill. 1989)).  This characterization becomes important within the bankruptcy context and will be discussed further below.

One more aspect of tax sales is necessary to understand the issues in this case.  The Tax Code also provides several grounds upon which the state court may order a sale in error, thereby requiring the county to refund the tax purchaser the full amount paid to obtain the certificate of purchase.  35 Ill. Comp. Stat.

200/21-310. If a bankruptcy petition under Chapters 7, 11, 12, or 13 is filed by or against the landowner before the expiration of the redemption period, the purchaser (and only the purchaser) may assert a sale in error and seek a refund of the amount paid to the county. *Id.* at 200/21-310(b)(1) If a sale in error is ordered, the county makes a full refund to the purchaser, including any interest accrued, penalties, fees, or other taxes paid by the purchaser. 35 ILL. COMP. STAT. 200/21-315 through 316.

### B. Whether a Tax Sale Gives Rise to a Claim Treatable in Bankruptcy

To determine whether a tax purchaser is entitled to modification of the automatic stay provision of the Bankruptcy Code, the first question the Court must address is whether and to what extent a "claim" within the bankruptcy context exists after a tax sale. This Court adopts the view that where the landowner files a bankruptcy petition prior to the expiration of the redemption period, both the tax purchaser and the county hold claims in bankruptcy against the landowner.

The Bankruptcy Code provides two definitions of a "claim." Section 101(5)(A) defines it as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A). Section 101(5)(B) defines a claim as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not

- 7 -

such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." This language indicates Congress' intent to "adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

There are competing views as to whether the tax purchaser holds a claim treatable in bankruptcy. One court focused on the relationship between the tax purchaser and the landowner to hold that no such claim exists. *See In re Blue*, 247 B.R. 748 (Bankr. N.D. Ill. 2000). The court in *Blue* determined that because there is no direct creditor-debtor relationship between the purchaser and the landowner, the purchaser has no treatable claim in bankruptcy. 247 B.R. 751-52.

This interpretation relies on the Illinois Supreme Court's holding in *A.P. Properties, Inc. v. Goshinsky*, 714 N.E.2d 519 (Ill. 1999). There, the court was interpreting the Uniform Fraudulent Transfer Act (the "UFTA") within the context of an Illinois tax sale. To sustain a cause of action under the UFTA, one must demonstrate that he is a "creditor" with a "claim" against a "debtor" as those terms are defined in the statute. 740 Ill. Comp. Stat. 160/2(c), (d), (f). The court found that the Illinois Tax Code does not create creditor-debtor relationship between the tax purchaser and the landowner after a tax sale. *Id.* at 530. Therefore, the tax purchaser holds no "claim" against the landowner

under the UFTA. *Id.* Citing the fact that the UFTA and the Bankruptcy Code employ similar definitions of the terms "claim" and "creditor," the *Blue* court relied on *A.P. Properties* and held that a tax purchaser is not a "creditor," does not hold a "claim" against the landowner in bankruptcy, and is therefore not bound by the terms of the landowner's Chapter 13 Plan. *Blue*, 247 B.R. at 751-52.

A slightly different approach focuses on the rights of the tax purchaser rather than on the relationship between the purchaser and the landowner. *See Jackson v. Midwest P'ship*, 176 B.R. 156, 158 (N.D. Ill. 1994). The *Jackson* court found that the certificate of purchase issued after a tax sale "represents an absolute right to receive title to the property if redemption is not made within the statutory period." *Id.* at 158. The *Jackson* court compared the rights of a tax purchaser to the rights of a traditional lien holder and found that the purchaser does not hold a lien against the property. *Id.* It therefore concluded that the purchaser does not have a "right to payment" as contemplated by the Bankruptcy Code's definition of "claim." *Id.*

The Court respectfully declines to follow the reasoning in those cases and is instead persuaded by the reasoning of *In re Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001) and its progeny. *See also, In re Kasco*, 378 B.R. 207 (Bankr. N.D. Ill. 2007). The *Bates* court first noted the Supreme Court's broad interpretation of

"claim" in *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552 (1990). There, the Supreme Court held that where a convicted criminal (and bankruptcy debtor) had been ordered to make restitution payments in the criminal case, a right to payment (*i.e.*, a "claim") existed in bankruptcy despite the fact that no there was no civil process available to enforce the restitution order. *Pennsylvania*, 495 U.S. at 559-60 (noting that the fact that the "enforcement mechanism is criminal rather than civil does not alter the restitution order's character as a 'right to payment'"). (Congress later expressly prohibited the discharge in bankruptcy of restitution orders, but the Supreme Court noted that legislation did not disturb the Court's "general conclusions on the breadth of the definition of 'claim' under the Code." *See Johnson v. Home State Bank*, 501 U.S. 78, 83 n.4 (1991)).

In *Davenport*, there was also no traditional creditor-debtor relationship between either the victim and the criminal or the Probation Department and the criminal, because the only enforcement mechanism was the threat of imprisonment. *Davenport*, 495 U.S. at 559-60. Similarly, here, the Illinois Tax Code does not provide a civil process for obtaining payment of the redemption amount after the tax sale. Instead, the "tax purchaser holds a claim against a debtor in bankruptcy – a 'right to payment' enforced by potential loss of the debtor's home – under § 101(5)(A)." *Bates*, 270 B.R. at 463. Contrary to the reasoning in *Blue*, the existence of a

traditional creditor-debtor relationship is not essential to the existence of a claim in bankruptcy. *Id.* at n. 4.

The Court also disagrees with the *Jackson* court's view that the purchaser does not hold a lien because the view appears to be contrary to the characterization of a tax purchaser's interest under Illinois law. As noted above, Illinois law views the tax purchaser's interest as an *in rem* lien enforceable by receipt of a tax deed after expiration of the redemption period. *Application of Rosewell*, 537 N.E.2d at 765 ("When the court confirms the sale, the county's lien is extinguished, and a new lien arises by operation of law in favor of the purchaser"). Appellant's lien, as discussed below, is a claim that can be treated in a Chapter 13 bankruptcy proceeding.

The view that a bankruptcy claim exists in the tax sale context finds additional support in the definition of claim in § 101(5)(B) of the Bankruptcy Code. The Seventh Circuit has held that where a right to payment and a right to an equitable remedy exist as "alternative" remedies for a breach of some performance, a claim exists under § 101(5)(B). *In re Udell*, 18 F.3d 403, 408 (7th Cir. 1994). The *Bates* court found, as does this Court, that a tax purchaser receives alternative remedies against the landowner: "either a court order directing issuance of a deed to the property or else payment of the taxes (with whatever penalty

was assessed at the sale) through redemption." *Bates*, 270 B.R. at 464.

For all of these reasons, the Court finds that Appellant holds a "claim" against the landowner/debtor in bankruptcy.

### C. Proper Treatment of Tax Purchaser's Claim in Bankruptcy

Having determined that a claim exists, the focus turns to the manner in which the claim is to be treated in a Chapter 13 bankruptcy proceeding. There are a number of provisions of the Bankruptcy Code that are crucial to a comprehensive discussion of this issue. The first of these are the sections that discusses the meaning of "secured claim" and "lien." Though the Bankruptcy Code provides no separate definition, the designation of a claim as "secured" is addressed in Section 506. That section states that the term "secured claim" includes an "allowed claim of a creditor secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a)(1). A "lien" is defined by § 101(37) as "a charge against or interest in property to secure payment of a debt or performance of an obligation."

As long as the landowner files a bankruptcy petition before the expiration of the period of redemption, this is precisely the type of claim that the tax purchaser holds. As noted above, before the expiration of the redemption period, the landowner still retains legal and equitable title in the property. *Application of the Cook Cnty. Treasurer*, 542 N.E.2d at 16. The tax purchaser

holds an interest in obtaining a tax deed to that property, which Illinois law views as a lien on the property. *Application of Rosewell*, 537 N.E.2d at 765. Where the debtor files in bankruptcy before the expiration of the redemption period, his interest in the property (including the right to redemption) passes to the bankruptcy estate, pursuant to 11 U.S.C. § 541(a), and the tax purchaser holds a lien which qualifies as a secured claim in bankruptcy. *Bates*, 270 B.R. at 465 n.5.

Chapter 13 of the Bankruptcy Code contains the other provisions pertinent to this discussion. Pursuant to 11 U.S.C. § 1322(b)(2), the Chapter 13 plan may generally modify the rights of holders of secured claims. That section is limited however, by § 1325(a)(5)(B) which provides that under a Chapter 13 plan, the secured creditor retains the lien securing his claim until the debt is paid in full, which can be done with periodic payments over the life of the plan. *Bates*, 247 B.R. at 465-66. The last important section within the context of a tax sale is Section 108(b). That section states that where "applicable non-bankruptcy law" fixes a period within which a Chapter 13 debtor may "cure a default, or perform an other similar act, and such period has not expired before the date of the filing of the petition," the trustee may only "cure, or perform, as the case may be," before the later of the expiration of that period, or 60 days after the order for relief. 11 U.S.C. § 108(b).

Here, again, there are different approaches to how these sections interact to affect the rights of the tax purchaser and the landowner in a Chapter 13 proceeding. For the reasons explained below, this Court adopts the view that § 108(b) does not restrict a debtor's right to modify the secured claim of a tax purchaser in the Chapter 13 plan.

One of the main incentives a debtor has for filing a Chapter 13 petition, as opposed to a Chapter 7 petition, is the ability to modify the rights of secured creditors. *Bates*, 270 B.R. at 466. The debtor is able to retain the value of the collateral and pay the value of the secured claim in installments over the life of the plan. *Id.* The secured claim of a tax purchaser should be no different.

Section 108(b) seems to set a limit on the amount of time a trustee has to cure a default after the filing of a bankruptcy petition. However, "[n]othing in § 108(b) transforms the extension of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code." *Bates*, 270 B.R. at 466. Section 108(b) should not be read to limit the debtor's right to modify the tax purchaser's (or the county's) secured claim pursuant to §§ 1322(b)(2) and 1325(a)(5). *Id*.

Courts taking the opposing view of the interaction of these sections typically rely on the Seventh Circuit's decision in *In re Tynan*, 773 F.2d 177 (1985). *See In re Murray*, 276 B.R. 869, 876

- 14 -

(Bankr. N.D. Ill. 2002); *Jackson*, 176 B.R. at 159. In *Tynan*, the court was examining Section 108(b) as it applied to the statutory redemption period after a mortgage foreclosure sale. It held that where a bankruptcy petition is filed before expiration of the statutory foreclosure redemption period, Section 108(b) extends the period for only 60 days and does not allow for an extension of that period over the course of a Chapter 13 plan. *In re Tynan*, 773 F.2d at 179-80.

As explained by the *Bates* court, however, the *Tynan* holding is not applicable to the situation of a tax purchaser's claim after a tax sale. *Bates*, 270 B.R. at 466 n.7. The *Tynan* court specifically held that § 1322(b)(5), which provides a mechanism for curing a default, did not apply because a foreclosure judgment had been entered and a sale had already occurred. *Tynan*, 772 F.2d at 178. Thus, there was no way to treat the mortgage claim in bankruptcy and the debtor's only relief would have come from the 60-day extension of § 108(b). That is not the case here. As already discussed, the issue here, just as in *Bates*, is the debtor's right to modify the tax purchaser's secured claim. *Bates*, 270 B.R. at 466 n. 7.

The Court, therefore, agrees with *Bates* that *Tynan* does not control here and that Section 108(b) does not limit the Appellees' right to modify Appellant's claim in his Chapter 13 plan.

### D. Applicability of the Automatic Stay and Whether Modification Is Appropriate

The final issue to address, then, is the applicability of the automatic stay to proceedings for issuance of a tax deed. Not surprisingly, this is another question on which courts disagree and have come to various conclusions not only on the stay's applicability, but also on the tax purchaser's ability to gain relief from the stay in order to obtain a tax deed.

Some courts have held that the automatic stay is simply inapplicable to prevent a purchaser from seeking a tax deed after expiration of the redemption period. *See Jackson*, 176 B.R. 156; *McKeever v. McClandon*, 132 B.R. 996 (Bankr. N.D. Ill. 1991). The Court respectfully disagrees with the reasoning in those cases. The *Jackson* court relied primarily on the exception enumerated in 11 U.S.C. § 362(b)(3) which excludes from the stay's applicability "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection . . ." *Jackson*, 176 B.R. at 159. As the *Bates* court pointed out, however, an action seeking issuance of a tax deed is not an action to "perfect an interest" in property. *Bates*, 270 B.R. at 468. Perfection of a property interest "refers to the steps necessary to obtain priority over other creditors claiming an interest in collateral." *Id.* When a tax purchaser petitions for issuance of a tax deed, he is not

"perfecting" his interest, but rather seeking to enforce his security interest in that property. *Id.* Therefore, § 362(b)(3) is not applicable here.

Other courts have held that while the automatic stay does work to prevent any action seeking issuance of a tax deed, the purchaser is able to obtain relief from the stay for cause under 11 U.S.C. § 362(d)(1). *See In re Wells Properties, Inc.*, 102 B.R. 685 (Bankr. N.D. Ill. 1989); *In re Bequette*, 184 B.R. 327 (Bankr. S.D. Ill. 1995); *In re Murray*, 276 B.R. 869 (Bankr. N.D. Ill. 2002). Under this approach, the stay is applicable because even after expiration of the redemption period and until the tax deed is issued, the landowner/debtor still holds legal title to the property. *Bequette*, 184 B.R. at 337. Transfer of title to the purchaser, therefore, requires affirmative action on behalf of the purchaser (*i.e.,* petitioning the circuit court for an order issuing a tax deed) and absent an order for relief, the automatic stay would bar such action. *Id.* According to this approach, however, relief from the stay is "easily obtained because the tax purchaser, after expiration of the redemption period, has an apparent right to immediate possession of the property, which the debtor would be unable to adequately protect." *Id.;* 11 U.S.C. § 362(d)(1).

The Court agrees with the portion of this analysis regarding the applicability of the automatic stay, but disagrees that relief

from the stay is appropriate in this situation, where the redemption period had not expired before the bankruptcy filing.

When the secured claim of a tax purchaser is treated in a Chapter 13 plan, the purchaser's rights are still adequately protected and therefore, the stay should not be modified for cause. As discussed above, the Purchaser's interest in this case is protected because Section "1325(a)(5) requires that a secured creditor's lien remain in place to secure the debtor's performance under the debtor's plan." *Bates*, 270 B.R. at 468. If the debtor fails to make the required plan payments, the tax purchaser may proceed with enforcement of his lien. *Id.*

Alternatively, if the debtors fulfill their Chapter 13 obligations, the county will be paid back in full for the taxes, interest and penalty, and the county will pass this along to the Purchaser.

Finally, the Purchaser's interest is more immediately protected because he continues to possess the right to assert a sale in error due to the bankruptcy filing, in which case he would be entitled to a full refund of the purchase price plus interest. 35 ILL. COMP. STAT. 200/21-310, 315, 316.

For these reasons, the Court finds that a tax purchaser's rights are adequately protected when payment of the lien is provided for in the Chapter 13 plan. Therefore, modification of the stay for cause under § 362(d) is not appropriate.

### E. Lack of Notice and Provision of the Tax Debt in the Chapter 13 Plan

Appellant argues that because he was not given proper notice of the bankruptcy proceedings, and therefore was not given an opportunity to object to the Chapter 13 plan, he should not be bound by it and should be free to seek and obtain a tax deed. The Court disagrees.

Appellant argues that the plan does not adequately protect his interest and, because he was not given notice before it was confirmed, he had no opportunity to object to it. First, as noted above, the facts regarding any notice of the bankruptcy, or lack thereof, are unclear. Appellant only states that he was not given notice initially and was not notified when the Chapter 13 plan was confirmed. Appellant must have received notice at some point, as he filed the motion which gave rise to this appeal. There is no indication, however, of when or how that notice came.

Notwithstanding that lack of clarity, however, the Court rejects the argument that Appellant's interest is not adequately protected in the Chapter 13 plan due to his alleged lack of notice. Appellant admits that the plan does provide for repayment of the tax debt to the county (though he argues that it does not adequately provide for interest on the debt), which would in turn be refunded to Appellant. As explained in the preceding section, if that debt is not repaid in full, Appellant may still seek to enforce his lien by obtaining a tax deed. *Bates*, 270 B.R. at 468.

His lien remains intact throughout the bankruptcy proceeding. *Id.*; 11 U.S.C. § 1325(a)(5). Furthermore, Appellant still has the option of asserting a sale in error, which would result in a refund of the purchase price paid at the tax sale. 35 Ill. Comp. Stat. 200/21-310, 315, 316. The alleged lack of notice, therefore, does not provide a reason to reverse the bankruptcy court's decision.

### IV. CONCLUSION

For the reasons stated herein, the Bankruptcy Court's Decision Denying Appellant's Motion for Modification of the Automatic Stay is affirmed.

**IT IS SO ORDERED.**

											Harry D. Leinenweber, Judge
											United States District Court

**DATE:** 12/27/2012